The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



/S/ RUSS KENDIG
_____
Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| JAMES P. GALLEY AND | ) | CASE NO. 10-63443 |
| KIMBERLY C. GALLEY, | ) | |
| | ) | JUDGE RUSS KENDIG |
| Debtors. | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT INTENDED FOR** |
| | ) | **PUBLICATION)** |

    Toby L. Rosen, chapter 13 trustee ("Trustee"), objected to confirmation of Debtors' plan. She argues that Debtors incorrectly included net business income from Debtor Kimberly Galley's sole proprietorship on line three of the B22C, ultimately resulting in a three year commitment period determination. Trustee contends that if gross receipts are utilized, the commitment period is five years. Debtors assert they correctly completed the means test and three years is the applicable commitment period.

    The court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409.

    This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

1

## FACTS

The facts are not complex or unique. Debtor James Galley is employed by Ohio Materials Handling. His income is included on line two of the B22C. The joint debtor, his wife Kimberly Galley, operates Kinfolk Candles, a sole proprietorship. On line 3a of the means test, she listed gross receipts of $5,614.17. From this amount, she deducted business expenses of $4,630.50 on line 3b, resulting in net business income of $983.67. This amount, coupled with her husband's gross income, was used to calculate debtors' current monthly income. The total figure was lower than the median family income for an Ohio household of the same size, so Debtors proposed a three year plan. If Debtors had utilized gross receipts on line three of the means test, their total income would have exceeded the median family income and required a five year commitment period.

## LAW AND ANALYSIS

Debtors completed the B22C as written: using net business income as the basis for determining current monthly income. Since Trustee is arguing for an alternative approach, use of gross receipts, she is also arguing that the forms conflict with the bankruptcy code. If true, the bankruptcy code will triumph. See In re Arnold, 376 B.R. 652 (Bankr. M.D. Tenn. 2007); In re Cole, Case. No. 08-34090 (Bankr. N.D. Ohio 2009) (unpublished). Consequently, the starting point is the code.

When a chapter 13 debtor does not propose to pay allowed unsecured claims in full, a confirmable plan must propose payments for either three or five years. 11 U.S.C. §§ 1322(d); 1325(b)(4)(A). A debtor is required to submit to a five year plan when debtor's current monthly income exceeds the applicable median family income for a family of the same or smaller size in the same state. 11 U.S.C. §§ 1322(d)(1); 1325(b)(4)(A)(ii). "Current monthly income," or CMI, is defined as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income." 11 U.S.C. § 101(10A)(A). The definition does not distinctly state whether to use gross or net income.

When faced with this question, courts have looked at the definition of "disposable income" in section 1325(b)(2) for elucidation. See Drummond v. Wiegand (In re Wiegand), 386 B.R. 238 (B.A.P. 9th Cir. 2008); Arnold, 376 B.R. 652; In re Bembenek, 2008 WL 2704289 (Bankr. E.D. Wis. 2008) (unpublished). Under this provision, "disposable income" is current monthly income less reasonably necessary expenses, including business expenses. 11 U.S.C. § 1325(b)(2)(B). Based on this formula, the courts determined that "current monthly income" must encompass gross income because if it referred to net income, the need to deduct business expenses is redundant. Collier's is in accord with this conclusion. "The definition appears to include a sole proprietor's gross income, especially since amended section 1325(b) provides for business expenses to be deducted from the debtor's current monthly income." 2 Alan N. Resnick and Henry J. Sommer, Collier on Bankruptcy ¶ 101.10A, 101-76 (16th ed. 2011) (footnote omitted).

Both Arnold and Bembenek also note there is nothing in the definition of "current

2

monthly income" to suggest that it is anything but gross income. The definition of CMI simply does not suggest that any deductions are taken from gross income to arrive at "current monthly income." Without exploring the issue, the Sixth Circuit has stated that CMI "means the average gross monthly income that the debtor receives" in a case involving the meaning of "projected disposable income." Baud v. Carroll, 634 F.3d 327, 332 (6th Cir. 2011).

Both of these reasons are sufficient to convince the court that CMI captures gross income, not net income. The statutory language is not ambiguous and this interpretation does not render section 1325(b)(2)(B) meaningless.

In spite of this conclusion, which the court is compelled to reach under general rules of statutory interpretation, the court is convinced that Debtors' position is not thoroughly unfounded. The determination of the applicable commitment period is tied to the median family income as determined by the Unites States Census Bureau. 11 U.S.C. § 101(39A)(A). In reviewing the figures and statistics from the Census Bureau, it appears that the median family income figures do not include gross business expenses. Consequently, comparing CMI, as defined above, to the median income figures is incongruent.

The United States Trustee Program's ("USTP") website contains the following information on median family income:

> Section I. Census Bureau Data
>
> In Part III of Bankruptcy Form 22A and Part II of Bankruptcy Form 22C, debtors are instructed to enter the "Applicable median family income". This information is published by the Census Bureau according to State and family size, and the data is updated each year. In addition, pursuant to 11 U.S.C. § 101(39A)(B), the data on this Web site will be further adjusted early each calendar year based upon the Consumer Price Index for All Urban Consumers (CPI).
>
> The following link provides the median family income data published in October 2010, reproduced in a format that is designed for ease of use in completing these bankruptcy forms.
>
> Median Family Income Based on State/Territory and Family Size
> Available for download in MS Excel format. [XLS - 27 kb]

U.S. Trustee Program, http://www.justice.gov/ust/eo/bapcpa/20101101/meanstesting.htm (last visited April 19, 2011).

The figures presented by the USTP appear to be compiled from two separate documents created by the Census Bureau: the State Median Family Income by Family Size (1-year) and the State Median Family Income by Numbers of Earners in Family (1-

3

year).[1] U.S. Census Bureau, B19119, Median Family Income in the Past 12 Months (in 2009 Inflation-adjusted Dollars by Family Size (2009); U.S. Census Bureau, B19121, Median Family Income in the Past 12 Months (in 2009 Inflation-adjusted Dollars) by Number of Earners in Family (2009). Both documents indicate the figures compiled by the Census Bureau are generated from the 2009 American Community Survey. Id. Looking at the income questions contained in the survey, question 47(b) instructs respondents to "*Report NET income after business expenses.*" (emphasis original). See Exhibit A.[2]

Similarities between the income questions from the American Community Survey and the B22C exist. Since the applicable commitment period determination is based on whether a debtor falls above or below the median income, it is rational that the B22C questions would be consistent with the same questions asked to gather the data used to determine median income. It appears that data is based on net business income, not gross receipts.

Unfortunately, BAPCPA has not always proved to be a model of consistency or logic. Although the court finds a foundation for the process used to develop Official Form B22C, including use of net income, interpretation of the bankruptcy code results in adoption of a definition which counters the form. The unambiguous statutory interpretation must prevail.

Debtors have incorrectly calculated their current monthly income by utilizing net business income in line three of the B22C. Trustee's objection will be sustained.

An order in accordance with this opinion will be issued immediately.

#   #   #

---

[1] The documents are available at:
    http://www.census.gov/hhes/www/income/data/statemedian/index.html
as of April 19, 2011.

[2] Exhibit A was printed from:
    http://www.census.gov/acs/www/about_the_survey/questions_and_why_we_ask/
on April 19, 2011 from the "Income" hyperlink under the section titled "Economic (Population and Housing)."

4

**Service List**:

Toby L. Rosen
Charter One Bank Building, 4th Floor
400 W. Tuscarawas St.
Canton, OH 44702

Edward S Lake
Edward Lake & Associates, LLC
4450 Belden Village Street
Suite 804
Canton, OH 44718

5

# American Community Survey
## Population: Questions on Income

Questions as they appear in the questionnaire.

**47 INCOME IN THE PAST 12 MONTHS**

Mark (X) the "Yes" box for each type of income this person received, and give your best estimate of the TOTAL AMOUNT during the PAST 12 MONTHS. (NOTE: The "past 12 months" is the period from today's date one year ago up through today.)

Mark (X) the "No" box to show types of income NOT received.

If net income was a loss, mark the "Loss" box to the right of the dollar amount.

For income received jointly, report the appropriate share for each person – or, if that's not possible, report the whole amount for only one person and mark the "No" box for the other person.

a. **Wages, salary, commissions, bonuses, or tips from all jobs.** Report amount before deductions for taxes, bonds, dues, or other items.

☐ Yes → $ _____ .00
☐ No
TOTAL AMOUNT for past 12 months

b. **Self-employment income from own nonfarm businesses or farm businesses, including proprietorships and partnerships.** Report NET income after business expenses.

☐ Yes → $ _____ .00 ☐ Loss
☐ No
TOTAL AMOUNT for past 12 months

c. **Interest, dividends, net rental income, royalty income, or income from estates and trusts.** Report even small amounts credited to an account.

☐ Yes → $ _____ .00 ☐ Loss
☐ No
TOTAL AMOUNT for past 12 months

Source: ACS-1(2009)KFI

d. **Social Security or Railroad Retirement.**

☐ Yes → $ _____ .00
☐ No
TOTAL AMOUNT for past 12 months

e. **Supplemental Security Income (SSI).**

☐ Yes → $ _____ .00
☐ No
TOTAL AMOUNT for past 12 months

f. **Any public assistance or welfare payments from the state or local welfare office.**

☐ Yes → $ _____ .00
☐ No
TOTAL AMOUNT for past 12 months

g. **Retirement, survivor, or disability pensions.** Do NOT include Social Security.

☐ Yes → $ _____ .00
☐ No
TOTAL AMOUNT for past 12 months

h. **Any other sources of income received regularly such as Veterans' (VA) payments, unemployment compensation, child support or alimony.** Do NOT include lump sum payments such as money from an inheritance or the sale of a home.

☐ Yes → $ _____ .00
☐ No
TOTAL AMOUNT for past 12 months

**48 What was this person's total income during the PAST 12 MONTHS?** Add entries in questions 47a to 47h; subtract any losses. If net income was a loss, enter the amount and mark (X) the "Loss" box next to the dollar amount.

☐ None OR $ _____ .00 ☐ Loss
TOTAL AMOUNT for past 12 months

## MEETING FEDERAL NEEDS

Income is a vital measure of general economic circumstances. Income data are used to determine poverty status, to measure economic well-being, and to assess the need for assistance. These data are included in federal allocation formulas for many government programs.

ExH A

USCENSUSBUREAU
*Helping You Make Informed Decisions*

United States Census 2010

# American Community Survey
## Population: Questions on Income

## COMMUNITY BENEFITS

### Social Services
Under the Older Americans Act, funds for food, health care, and legal services are distributed to local agencies based on data about elderly people with low incomes.

Data about income at the state and county levels are used to allocate funds for food, health care, and classes in meal planning to low-income women with children.

### Employment
Income data are used to identify local areas eligible for grants to stimulate economic recovery, run job-training programs, and define areas such as empowerment or enterprise zones.

### Housing
Under the Low-Income Home Energy Assistance Program, income data are used to allocate funds to areas for home energy aid.

Under the Community Development Block Grant Program, funding for housing assistance and other community development is based on income and other decennial census data.

### Education
Data about poor children are used to allocate funds to counties and school districts. These funds provide resources and services to improve the education of economically disadvantaged children.

www.census.gov

US CENSUS BUREAU
*Helping You Make Informed Decisions*


United States Census 2010